UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON T.,[1]

                                Plaintiff,              **DECISION AND ORDER**

v.                                                          6:22-cv-6305-JJM

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 8].[2] The parties have consented to my jurisdiction [13]. Having reviewed their submissions [6, 8], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 378-page administrative record [5] is presumed. On October 18, 2019, plaintiff filed an application for disability insurance benefits and supplemental security income, alleging an onset date of January 11, 2018. Administrative Record [5] at 15. Plaintiff complained of vision issues, brain damage, and having a synthetic plate in his

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

skull. Id. at 45-46. Plaintiff failed to return his activities of daily living ("ADL") questionnaire, to attend two scheduled consultative examinations, or to respond to agency inquiries. Id. at 49, 65. Plaintiff's claim was denied initially and again on reconsideration. Id.

A.   **The Hearing**

Administrative Law Judge ("ALJ") Michael W. Devlin conducted a telephone hearing on July 19, 2021. Id. at 28-44. Plaintiff was represented by an attorney. Id. at 15. At the hearing, plaintiff testified that he lived with his wife and two children, whom he cared for during the day while his wife worked. Id. at 31. His son has severe cerebral palsy and is "fully dependent" on his care. Id. at 31, 37-38. His daughter was 10 months old. Id. at 31, 38. He testified that he had a brain injury from when he was a baby that permanently affected his right-side peripheral vision and his memory. Id. at 35-36. He also testified that he had ADHD and was easily distracted. Id. at 37. He denied any other mental health or physical limitations. Id. at 36, 39. He previously worked as an overnight cashier at Speedway. Id. at 33.

A vocational expert testified that an individual capable of work in the light exertion range, who could sit, stand, and walk for six of eight hours a day, occasionally push or pull 20 pounds, frequently climb ramps or stairs, but could never climb ladders, ropes, or scaffolds, or work at unprotected heights, or perform tasks requiring right peripheral vision, and could understand, remember, and carry out simple instructions and tasks could perform plaintiff's past work as a cashier. Id. at 42.

B.   **The Medical Evidence**

In reaching his Decision, ALJ Devlin considered testimony and medical history. Plaintiff's medical treatment record was quite limited, consisting of only two relevant entries.

In June 2015, plaintiff presented to John Redwine, M.D., to establish care. Id. at 348. Plaintiff reported having skull surgery at age 14, which left him with vision loss, memory loss, and poor focus, all of which were worsening. Id. He also reported intermittent knee and toe pain. Id. He had not been recently evaluated for such conditions. Id. On examination, plaintiff demonstrated no distress and some visual field loss. Id. He was referred to a neurologist and an ophthalmologist. Id. There is no indication that plaintiff followed up on those referrals.

In May 2019, plaintiff presented to Meghan Shaughnessy, D.O., to establish care. Id. at 332. Plaintiff reported pain in his left toe from a slip-and-fall incident a month or two earlier. Id. He recounted his previous skull surgery and residual issues with his right-side peripheral vision. Id. at 333. He reported having a very active lifestyle. Id. at 332.

State Agency consultants reviewed plaintiff's application and medical record, noted that plaintiff failed to return an ADL questionnaire or attend consultative examination, and found there to be "insufficient evidence" and a failure to cooperate. Id. at 48, 49, 65, 66. ALJ Devlin declined to consider the persuasive value of these opinions. Id. at 20.

C.     **The ALJ's Decision**

On August 18, 2021, ALJ Devlin issued a Notice of Decision denying plaintiff's claim. Id. at 15-21. He found that plaintiff had the "medically determinable" impairments of toe injury, gastroesophageal reflux disease (GERD), obesity, head injury, visual field defects, and attention deficit hyperactivity disorder (ADHD). Id. at 17. However, he found that none of those impairments significantly limited plaintiff's ability to perform basic work-related activities for 12 consecutive months, and that therefore plaintiff did not have a "severe" impairment or combination of impairments. Id. at 18.

In so finding, ALJ Devlin noted plaintiff's complaints of visual field loss, but found that the degree of vision loss was never quantified, and that plaintiff never sought care from an ophthalmologist or other specialist. Id. at 19. He also addressed plaintiff's toe injury, noting that no bruising or tenderness was demonstrated on evaluation, that the pain had mostly resolved, and that plaintiff reported a "very active" lifestyle. Id. at 19, 332. Finally, in deference to plaintiff's testimony and his June 2015 report of memory loss and poor focus, ALJ Devlin assessed him as mildly limited in the functional domains of understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. Id. at 20.

Overall, ALJ Devlin found that plaintiff had no more than mild limitations in his physical and mental functioning and that, therefore, his conditions were non-severe. Id. Accordingly, he found that plaintiff was not disabled. Id. at 21.

## ANALYSIS

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely

hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      ALJ Devlin's Decision was Supported by Substantial Evidence.**

Plaintiff argues that the record was insufficient to support ALJ Devlin's Decision because it lacked medical opinion evidence. [6-1] at 5. The Commissioner argues that the record was complete and points to plaintiff's failure to attend scheduled consultative examinations or otherwise cooperate with the Commissioner's development of the record. [8-1] at 8-15. I agree with the Commissioner.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [the ALJ's] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). The determination of whether evidence is substantial is made on a "case-by-case" basis. Biestek, 587 U.S. at 98.

At step two, an ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §§404.1520(a)(ii); 416.920(a)(ii). A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities". §§404.1520(c); 416.920(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs", including (among other things) physical abilities for

movement and manipulation; capacity for seeing, hearing, and speaking; and mental abilities such as the ability to understand, carry out, and remember simple instructions. §404.1522(b).

With respect to the mental component, the ALJ performs a so-called "special technique", specifically assessing a claimant's abilities in the four broad functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. §404.1520a(b)-(c). The regulations further provide that "[i]f we rate the degrees of your limitation as 'none' or 'mild', we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities". §404.1520a(d)(1).

Here, ALJ Devlin conducted those analyses and concluded that plaintiff's limitations were no more than mild in any functional area, and the evidence did not otherwise indicate any more than minimal limitations in his ability to do basic work activities. [5] at 20. In so doing, ALJ Devlin discussed plaintiff's subjective complaints of vision loss, memory loss, and poor focus, as well as his toe pain, correctly noting that plaintiff had never sought treatment for any of those conditions, and that there had never been an objective evaluation quantifying or assessing the degree of such alleged impairments. Id. at 19-20; see Reeves v. Commissioner of Social Security, 2020 WL 4696589, *6 (W.D.N.Y. 2020) (citing "the lack of duration and the infrequency of Plaintiff seeking treatment" as bases for finding an impairment non-severe). He also noted that plaintiff was providing full-time care to two young children, one of which was "fully dependent" on him, and that he testified to having a "very active" lifestyle. Id.

On review, the court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude

-6-

otherwise". Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (Summary Order) (citations omitted). Here, the evidence easily supports ALJ Devlin's interpretation.

Plaintiff is correct that the record lacks a medical opinion, as that term is defined. *See* 20 C.F.R. §404.1513(a)(2) ("[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). However, the Second Circuit has repeatedly held that "a medical source statement or formal medical opinion is not necessarily required", at least where "'the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity'". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary Order) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013) (Summary Order)). While those decisions are in the context of a residual functional capacity determination (*i.e.*, step four), which ALJ Devlin did not reach here, the rule would make little sense if a medical opinion were, in fact, required at an earlier step in the process (*e.g.*, step two). Rather, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information". Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); *see* Timothy D. v. Commissioner of Social Security, 652 F. Supp. 3d 387, 394 (W.D.N.Y. 2023). At the hearing, plaintiff's counsel indicated there were no outstanding medical records. [5] at 43. Plaintiff does not dispute that representation now.

Plaintiff nonetheless takes the position that ALJ erred in proceeding without a medical opinion. [6-1] at 7-8. Plaintiff suggests that the ALJ was required to make yet *another* attempt to send him for a consultative examination, despite his admitted failure to attend the two previously scheduled exams. *See* id. Contrary to plaintiff's position, the regulations are clear that

a failure to participate in consultative examinations or to otherwise fail to cooperate with the Commissioner in obtaining evidence can be prejudicial to a claimant. *See* 20 C.F.R. §§404.1518(a); 416.918(a) ("[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination . . . we may find that you are not disabled or blind"); §416.916 ("[w]hen you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case"); *see also* §404.1516 ("[i]f you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case").

       Here, plaintiff failed to return his ADL questionnaire, failed to attend two scheduled consultative examinations, and failed to follow up with the Commissioner – and has at no point offered an excuse or explanation for those shortcomings. "To be sure, a hearing on disability benefits is a non-adversarial proceeding[, and a]n ALJ generally has an affirmative duty to develop the administrative record" (Schillo v. Kijakazi, 31 F.4th 64, 76 (2d Cir. 2022)), but this obligation "is not unlimited". Martin v. Saul, 2020 WL 5096057, *4 (W.D.N.Y. 2020). "[P]laintiff, having failed without excuse or explanation to attend the consultative examinations, 'cannot now prevail based upon a challenge to the adequacy of the record'." Kevin P. v. Commissioner of Social Security, 2020 WL 7231621, *3 (W.D.N.Y. 2020) (citing cases).

       Despite bearing the burden of proof (Talavera, 697 F.3d at 151), plaintiff has produced absolutely no objective evidence in support of his claims, and repeatedly stymied the Commissioner's efforts to develop the record. Plaintiff's lack of treatment for the alleged conditions and his demanding self-reported lifestyle, coupled with his failure to cooperate in further developing the record, constitutes substantial evidence in support of ALJ Devlin's Decision. *See* Derek W. v. Commissioner of Social Security, 2022 WL 16856672, *5 (W.D.N.Y.

2022) (finding the record sufficient while accounting for plaintiff's failure to, *inter alia*, submit ADL forms or attend a scheduled consultative examination). Therefore, his appeal is denied.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [8] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: March 3, 2025

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. McCARTHY<br>
United States Magistrate Judge